UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                Plaintiff,           14 Civ. 7473

    -against-                     OPINION

ACTAVIS, PLC, and
FOREST LABORATORIES, LLC,

               Defendants.

--------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiff

       NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
       120 Broadway, 26th Floor
       New York, NY 10271
       By:  Elinor R. Hoffmann, Esq.

       Attorneys for Defendants

       WHITE & CASE LLP
       1155 Avenue of the Americas
       New York, NY 10036
       By:  Jack Pace, Esq.
            Martin Michael Toto, Esq.
            Peter J. Carney, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/21/14

**Sweet, D.J.**


Defendants Forest Laboratories, LLC ("Forest") and

Actavis, PLC ("Actavis") (collectively, the "Defendants") have

moved to maintain under seal, as confidential, commercially-

sensitive information, portions of the Complaint filed by the

People of the State of New York (the "State" or the

"Plaintiff").  Based on the conclusions set forth below, the

motion is granted in part and denied in part.


**Prior Proceedings**


On February 28, 2014, the Antitrust Bureau of the

Office of the Attorney General of the State of New York (the

"Bureau") opened an investigation into Forest's business plans

regarding the pharmaceutical product Namenda, an FDA-approved

therapy to treat Alzheimer's disease.  Forest produced over 1.7

million pages of documents (pursuant to three subpoenas), three

executives to provide investigational testimony, written

interrogatory responses, and additional items that the Bureau

requested informally.  Forest produced this information

designated as "Highly Confidential" and requested that any of

1

the produced information used in any proceeding be filed under
seal.

On September 15, 2014, the State filed its Complaint
relating to the Bureau's investigation, referencing documents
and testimony provided by Forest during the investigation.
Counsel for Defendants immediately notified the Bureau of the
Defendants' confidentiality concerns and requested that the
Complaint be refiled with the proposed redactions.

The State agreed to file its Complaint on September 19
with the redactions requested by the Defendants.

The Complaint alleges that Defendants violated federal
and state antitrust laws by attempting to improperly maintain
and extend a monopoly over the drug they developed to treat
Alzheimer's disease.  The Complaint seeks injunctive relief
requiring Defendants to keep the original form of the drug,
Namenda 1R, on the market and to prevent the Defendants from
seeking to switch patients to a new patent-protected form,
Namenda XR.

The Complaint describes: the parties (Compl. ¶¶ 12-15); the regulatory framework and relevant federal regulations, including the Food Drug and Cosmetic Act, 21 USC § 301 et seq., the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585, the Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-115, 111 Stat. 2296 (Compl. ¶¶ 16-20); the State Generic Substitution Laws (Compl. ¶¶ 21-27); and the effect of generic competition and brand name manufacturers' tactics to evade them (Compl. ¶¶ 28-43), including the practice of "product hopping," which the Defendants are alleged to be contemplating in order to avoid the "patent cliff."

The Complaint also describes: Alzheimer's disease and the relevant products (Compl. ¶¶ 44-45); and the relevant market (Compl. ¶¶ 46-63) including Memantine that is branded and marketed as Namenda by Defendants, Namenda's recent sales of $1.5 billion in the United States, the extension of the Namenda patents, and the anticipated entry of generic competition in July 2015.  The Complaint further alleges that the Defendants have made efforts to stall the effects of generic entry in the market (Compl. ¶¶ 64-97), including the launch of Namenda XR in June 2013 and the effort to convert patients from Namenda IR to

3

Namenda XR and the plan to force switches.  The Complaint
alleges the anticompetitive effect of the conduct of the
Defendants (Compl. ¶¶ 98-104) and their conduct in exaggerating
the imminence of the plan to force switches (Compl. ¶¶ 105-117).

Five causes of action are alleged: (1) monopolization
in violation of Section 2 of the Sherman Act; (2) attempted
monopolization in violation of Section 2 of the Sherman Act; (3)
violation of the Donnelly Act, New York General Business Law
Section 340 et seq.; (4) repeated or persistent illegality in
violation of Section 63(12) of the New York Executive Law; and
(5) repeated or persistent fraud, in violation of Section 63(12)
of New York Executive Law.

The Defendants' motion to maintain the sealed portions
of the Complaint was heard and marked fully submitted on
September 24, 2014.

**The Standard for Sealing**

In re James, Hoyer, Newcomer, Smiljanich and
Yanchunis, P.A., illustrates the policy considerations at the
heart of this motion:

4

> [A producing party ("Party")] requested at the
> time the documents were produced to the [Office
> of the Attorney General ("OAG")], that all the
> documents be maintained as confidential and
> exempt from disclosure under FOIL.  [The Party's]
> expectation of confidentiality was specifically
> discussed with the OAG at the time.  This
> expectation of confidentiality for these
> documents was very important in the [Party's]
> decision to cooperate with the OAG's
> investigation.  It would violate that
> expectation, and probably deter future
> cooperation by [the Party] and other affected
> entities, if any of [the Party's] documents were
> now released. . . .  [But in] today's era . . .
> free access to information is even more critical
> as a fundamental step in protecting consumers.

Index No. 114184/09, 2010 WL 1949120, at *1, *6 (N.Y. Sup. Ct.

Mar. 31, 2010).


On the one hand, as the court in In re Crowley Food,

Inc. noted:


> There is a sound rationale for the requirement of
> confidentiality.  If there were no
> confidentiality in antitrust investigations,
> those who were the subjects of an investigation
> would be 'tarred with the taint' of having
> violated the antitrust laws even though that may
> not be the case.  It would be analogous to
> announcing the empaneling of a grand jury to
> investigate one's activities.  It implies a
> suspicion of guilt.

Index No. 119316, 1979 WL 18648, at *6 (N.Y. Sup. Ct. Mar. 10, 1979).

Similarly, in federal antitrust cases, the government regularly filed documents under seal or with confidential information redacted.  See, e.g., Br. for Appellant United States of America (Redacted), United States v. AMR Corp., 335 F.3d 1109 (2002) (No. 01-3202) (available at http://www.justice.gov/atr/cases/f9800/9814.htm); Pl.'s Mot. for Permission to File Competitively Sensitive Information under Seal and for an Interim Protective Order, United States v. Sungard Data Sys., Inc., 172 F. Supp.2d 172 (2001) (No. 01-02196) (available at http://www.justice.gov/atr/cases/f9300/9376.pdf); Pl.'s Mot. to File under Seal, United States v. The Home City Ice Co. (2007) (No. 07-140) (available at http://www.justice.gov/atr/cases/f234200/234206.htm).

On the other hand, there is a strong presumption of public access to federal court filings under the common law and the First Amendment.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120-21 (2d Cir. 2006) (for judicial documents, "a strong presumption of access attaches, under both the common law

6

and the First Amendment"). Once First Amendment protection

extends to a court filing, "continued sealing of the documents

may be justified only with specific, on-the-record findings that

sealing is necessary to preserve higher values and only if the

sealing order is narrowly tailored to achieve that aim." Id. at

124; see also In re Parmalat Sec. Litig., 258 F.R.D. 236, 244

(S.D.N.Y. 2009) (sealing requires "particular and specific

demonstration of fact showing that disclosure would result in an

injury sufficiently serious to warrant protection; broad

allegations of harm unsubstantiated by specific examples or

articulated reasoning fail to satisfy the test") (internal

citations and quotations omitted).


      A party wishing to seal materials has the burden to

show good cause as to why the material should be concealed from

the public. See Parmalat, 258 F.R.D. at 241. Courts can seal

"business information that might harm a litigant's competitive

standing" in the market. See id. at 244. However, "the fact

that business documents are secret or that their disclosure

might result in adverse publicity does not automatically warrant

a protective order." Id.; see also Salomon Smith Barney, Inc.

v. HBO & Co., 98 Civ. 8721, 2001 WL 225040, at *2 (S.D.N.Y. Mar.

7, 2001) (denying motion to remove documents from the public

court file where "[the movant]'s real concern is the possibility
of public embarrassment.").

        Internal documents and unpublished drafts that contain
non-public strategies and financial information constitute
"confidential commercial information" under Federal Rule
26(c)(1)(g), particularly where the disclosing company is
engaged in a highly competitive industry and deliberately has
shielded such information from its competitors.  See, e.g., Fox
News Network v. U.S. Dep't of Treas., 739 F. Supp. 2d 515, 571
(S.D.N.Y. 2010) (withholding draft containing proposed financial
and risk reporting strategy); Brittain v. Stroh Brewery Co., 136
F.R.D. 408, 415-416 (M.D.N.C. 1991) ("Such commercial
information, which encompasses strategies, techniques, goals and
plans, can be the lifeblood of a business [and] may also be
particularly deserving of protection if the disclosing
corporation is vulnerable to competitors.").

        Cost data is sensitive and potentially damaging if
shared with competitors.  See Vesta Corset Co. v. Carmen
Founds., Inc., 97 Civ. 5139, 1999 WL 13257, at *2 (S.D.N.Y. Jan.
13, 1999) (noting protocol to treat parties' cost information as
confidential and holding, "Pricing and marketing information are

                              8

widely held to be 'confidential business information' that may
be subject to a protective order"); Support Sys. Assocs. Inc. v.
Tavolacci, 135 A.D.2d 704, 522 N.Y.S.2d 604, 605-06 (N.Y. App.
Div. 1987) ("pricing and cost information provided to
[defendant] was ... confidential because if it were known to
competitors, they would be in a position to underbid the
plaintiff").  Marketing and promotional expenses are sensitive
and can be damaging if shared with competitors and customers,
depending "upon: 1) the extent to which information is known
outside the business; 2) the extent to which information is
known to those inside the business; 3) the measures taken to
guard the secrecy of the information; and 4) the value of the
information to the business and its competitors." Vesta, 1999
WL 13257, at *2.

        Applying the standard set forth above, courts grant
confidential treatment under circumstances where trade secrets
and material that would place a party at a competitive
disadvantage are being used in public filings.

**Confidential Treatment is Granted in Part and Denied in Part**

       As described above, certain allegations which the Defendants have asserted are confidential have been redacted in the Complaint filed by the State.  The Defendants now seek to have those redactions maintained under seal while, in the main, the State contends that the public interest requires the redactions to be made public.

       As in Parmalat, 258 F.R.D. at 244, the party seeking the sealing has the burden of establishing the competitive disadvantage.  The Defendants have submitted the 2½ page somewhat conclusory affidavit of William Kane, the Vice President Marketing Internal Medicine at Forest for that purpose.  The Complaint establishes that the conduct which is challenged here is part of a complicated mosaic resulting from the exclusivity granted to patents, the FDA and state regulations, and the complications of competition between branded drugs and generics in the drug industry.  The competition at issue appears to be that between the Defendants and those who may seek to offer to patients generic versions of the Defendants' branded drugs.  A complicating factor is that

10

the Defendants' plans for that very competition are the gravamen of the State's Complaint.

As to the specific paragraphs at issue: [1]

Paragraph 69

The second sentence dealing with profit projections is confidential, the disclosure of which will competitively disadvantage the Defendants.  It will be sealed.

Paragraph 73

The first bulleted indented paragraph contains a business plan, the disclosure of which could competitively disadvantage the Defendants.  It will be sealed.

Paragraph 74

The Kane Affidavit fails to establish that this allegation would competitively disadvantage the Defendants.

---

[1]     Determinations with respect to redacted allegations in the Complaint do not constitute rulings on evidence relating to substantive issues.

Paragraph 75

The redacted portion of the allocation of promotional budget funds, if disclosed, would competitively disadvantage the Defendants.  It will be sealed.

Paragraph 79

The first sentence contains internal projections, the disclosure of which will competitively disadvantage the Defendants.  It will be sealed.

Paragraph 82

The State did not oppose this redaction.  It will be sealed.

Paragraph 83

The disclosure of financial projections of alternative plans would be a competitive disadvantage.  It will be sealed.

Paragraph 84

The Defendants have contended that the information reflected in this material was later determined to be largely unfounded.  No competitive disadvantage has been established.

Paragraph 85

No competitive disadvantage has been established.

Paragraph 86

The last sentence contains a projection, the publication of which would put the Defendants at a competitive disadvantage.  It will be sealed.

Paragraph 93

Although the Defendants classify this email as part of their regulatory strategy, and as reflecting confidential information, the disclosure of which would damage customer and contract relations, Kane Aff. ¶¶ 5-7, no competitive disadvantage has been established.

13

Paragraph 101


These redactions deal with income projections the
publication of which would competitive disadvantage the
Defendants.  They will be sealed.


Paragraph 103


The redaction deals with a manufacturing process which
must be viewed as common knowledge.  No competitive disadvantage
to Defendants has been established.


Paragraph 108


The redactions concern future plans for the
discontinuance of Namenda IR, the publication of which could
competitively disadvantage the Defendants.  They will be sealed.


**The Donnelly Act Confidentiality Does Not Warrant Redaction**


The Defendants also contend that the Donnelly Act (the
"Act") requires continued confidentiality with respect to
documents they have produced to the State, and the sealing of

14

the redacted portions of the Complaint.  The Act provides as
follows:

> Any officer participating in such inquiry [i.e.,
> an antitrust investigation] and any person
> examined as a witness upon such inquiry who shall
> disclose to any person other than the attorney
> general the name of any witness examined or any
> other information obtained upon such inquiry,
> except as so directed by the attorney general
> shall be guilty of a misdemeanor.  Such inquiry
> may upon written authorization of the attorney
> general be made public.

N.Y. Gen. Bus. Law § 343.  The Act permits the "inquiry" to be
made public, upon written authorization, but not the
"information obtained" in the inquiry.  See also id.
(authorizing the Bureau to issue subpoenas for "books or papers"
that the Bureau deems "relevant or material to the inquiry").

   With respect to the Defendants' repeated requests for
confidentiality, Plaintiff responded as follows:

> Finally pertaining to your concerns about
> protections for trade secrets and certain
> commercially sensitive information, New York's
> Freedom of Information Law expressly exempts such
> material from disclosure – as well as information
> compiled for law enforcement purposes, e.g.,
> during investigations by our office, N.Y. Public
> Officer Law, 87(2)(d), (e).

(Ex. 1 to Defs.' Order to Show Cause Sealing Compl.)

This provision was not violated during the investigation by the Bureau and did not cloak all the material produced with confidentiality for all time.  When the Complaint was filed, N.Y. Gen. Bus. Law § 343 provided that information and documents obtained in a Donnelly Act investigation may "be made public" upon "authorization of the attorney general."  New York courts have affirmed this statutory authority, holding that "[t]he Attorney General ... is expressly authorized by statute, to reveal ... information [obtained in a Donnelly Act investigation] at any time."  Ragusa v. New York State Dep't of Law, 578 N.Y.S.2d 959, 963 (N.Y. Sup. Ct. 1991).  This is consistent with the Attorney General's power in other areas, such as under the Martin Act.  See e.g., New York v. Thain, 24 Misc.3d 377, 383 (N.Y. Sup. Ct. 2009) ("The case law is uniform that the Martin Act vests in the Attorney General the authority to decide whether the information he gathers as part of his investigation should be kept secret or public.").

Therefore, the Donnelly Act argument does not alter the analysis as described above.

**Conclusion**

      The motion of the Defendants to maintain the sealing of the redacted portions of the Complaint is granted in part and denied in part as set forth above.

      It is so ordered.

New York, NY
October 24, 2014

_____
      ROBERT W. SWEET
         U.S.D.J.

17